## VOLLINK v. HOLLAND CELERY PLANT-ER CO. et al.

### No. 2802.

District Court, W. D. Michigan, S. D.

Feb. 9, 1938.

Barnwell R. King, and Troff & McKessy, all of Kalamazoo, Mich., for plaintiff.

Diekema, Cross & Ten Cate, of Holland, Mich., and Rice & Rice, of Grand Rapids, Mich., for defendants.

RAYMOND, District Judge.

Plaintiff charges infringement by defendants, Louis Poll, Henry Poll and Benjamin Poll, copartners doing business as Holland Celery Planter Company, of claims 4, 5, 11, 12, 13 and 14, of Vollink patent No. 1,765,467, issued June 24, 1930, on application filed January 29, 1927, for transplanting machine, and of claims 5, 8, 14, 16 and 18, of Vollink patent No. 1,765,468, issued June 24, 1930, on application filed February 27, 1928, for transplanting machine. Both patents show transplanting machines with horizontally disposed carrying frames. No. 1,765,467 discloses a machine designed for being towed, and the other, No. 1,765,468, a self-propelled type. Both types have endless conveyor chains which turn on sprocket wheels or pulleys and which carry plant holders with grippers or jaws which receive, hold and discharge plants. Furrow opening and furrow closing devices are also provided.

Typical claims of each patent are—
Patent No. 1,765,467:

"4. In a machine of the class described, the combination of a conveyor disposed longitudinally of the machine, means for driving said conveyor at a speed corresponding to the speed of travel of the machine, a plurality of holders mounted on said conveyor and provided with coacting plant engaging jaws, at least one of the jaws having resilient plant gripping means supported at spaced points, and means for closing said jaws and holding them closed as they move from plant receiving to discharging position."

"13. In a structure of the class described, the combination with a conveyor element provided with plant holders each comprising a normally open jaw member provided with a flexible plant gripping element supported at spaced points to permit it to yieldingly engage a plant, and means for successively closing said jaws and retaining them in closed position during a portion of the travel thereof."

"14. In a machine of the class described, the combination of a conveyor element provided with a plurality of plant holders, each comprising a jaw member provided with a flexible plant gripping element supported at spaced points to permit it to yieldingly engage a plant."

Patent No. 1,765,468:

"5. In a machine of the class described, the combination of a main carrying frame, a sub-frame mounted on said main frame, a furrow opener provided with spaced wings mounted on said sub-frame, furrow closing wheels provided with an axle disposed on said sub-frame at the rear of the furrow opener, a conveyor provided with a plurality of normally open holders, supporting and driving means therefor comprising a driving sprocket mounted on said sub-frame above the wings of said furrow opener, a pulley on said axle and a second pulley mounted in an elevated position above said main frame whereby said conveyor has a horizontal reach substantially parallel with the surface of the ground and alined with said furrow opener and a substantially vertical downward reach, and holder closing members disposed at the sides of the path of travel of said holders and adapted to close the same and retain in closed position, said closing members having vertical portions projecting upwardly from the furrow opener and horizontal portions projecting rearwardly from the furrow opener and terminating adjacent to but in advance of the vertical plane of said furrow closing wheel axle."

"18. In a machine of the class described, the combination of a main carrying frame, a sub-frame mounted on said main frame, a furrow opener carried by said sub-frame, furrow closing means mounted on said sub-frame at the rear of said furrow opener, a conveyor provided with a plurality of normally open holders, supporting and driving means for said conveyor whereby it has a horizontal reach substantially parallel with the surface of the ground and alined with said furrow opener, and holder closing means disposed at the side of the path of the holders and having portions alined with the furrow opener and terminating adjacent said furrow closing means."

Both patents relate to transplanting on a large scale and without injury thereto of relatively small and delicate plants such as celery, beets, cabbage, tomato and the like. Plaintiff urges that all the claims sued upon are infringed by planting machines constructed in accordance with Poll patent No. 2,003,390 and that claims 13 and 14 of Vollink patent No. 1,765,467 are also infringed by machines manufactured under Poll patent No. 1,888,143. Defendants' alleged infringing machines are not in evidence but manufacture of the machines illustrated and described in the two Poll patents is conceded.

The substantial defenses set up in the answer are invalidity, non-infringement and laches. Defendants also allege that Poll rather than Vollink was the first inventor of the subject matter of the claims relied upon.

The patents in suit as well as the Poll patents herein referred to relate to planting machines designed for setting plants in the ground while the planting machine is traveling at a comparatively rapid speed, the plant carrier being fed by an operator riding on the machine. The essential purpose is to eliminate the slow, tedious and difficult process of hand planting.

■ Consideration of prior art patents is convincing that none of the patents in suit can be given the status of a pioneer invention. Notwithstanding the fact that the alleged inventions have been upon the market for twelve years or more, no claim can fairly be made to other than a very limited degree of commercial success. Before proceeding further, the fact should be noted that the file wrappers of the patents in suit are replete with evidence that no good faith effort was made to comply with the statutory requirement that an applicant shall particularly point out and distinctly claim the part, improvement or combination claimed as his invention. A multitude of claims, both generic and specific, was presented to the patent office apparently designed to conceal rather than to disclose whatever of advance was claimed in the art. Persistence, more in evidence than inventive genius, resulted in the allowance of thirty-six claims of the patents as applied for, each of which under the law theoretically embodies a separate inventive concept. Brief consideration of the prior art is convincing that such of the claims in suit as are valid, can be accorded only a narrow construction, for the rule is well settled that while in a pioneer patent the patentee is allowed a wide range of equivalents and the language of its claims is to be broadly construed, in a combination patent the claims

are to be limited to the specific language used.

Davis patent No. 986,145, issued March 7, 1911, on application filed December 19, 1908, the object of which was to provide a plant-setting machine for setting young plants clearly discloses an endless conveyor sprocket chain, sprocket wheel mountings, a furrow opener, angularly disposed furrow closing wheels, appropriate speed relationship of the various parts, a plurality of plant holders spacedly mounted on the conveyor chain, and resilient plant engaging members or fingers, lined with rubber which are normally in engagement but which automatically spread to permit insertion of the plant and then by the action of a spreading bar resiliently grip the plant until planting position is reached when the plant is released by means of a trip element and discharged in the rear of the covering wheels. Zimmerman patent No. 342,490, issued May 25, 1886, discloses a plant setting machine supported by wheels, a sub-frame carrying a furrow opener and furrow closing wheels, a planter wheel with spaced pivotally mounted jaws with rubber faced members wherein the plants are retained until the jaws by means of cams are caused to open for release of the plant when planting position is reached. Claim 28 of that patent reads,—"A plant-setting machine having revolving wheel or carrier provided with nippers a, operated by cams which receive their motion from one of the carrying-wheels A, and the forward motion of the machine, whereby a plant may be held over a fixed point, planted, and released from the machine by mechanism substantially as specified."

■ The teachings of these patents and others with like functions (Ormiston 515,159, Cheeseman 570,905 and Bruhn 1,026,492) indicate the problems to be solved and the inventors' varying conceptions of possible solutions consisting in general of mounting resilient gripping members either upon an endless conveyor chain or upon a revoluble disc with means for opening and closing these gripping members for receiving, holding or discharging the plants. The difficulties experienced by the examiner in view of the prior art, in ascertaining the novel inventive concept in the many claims in the patents in suit are made clear by examination of the file wrappers. Mere carrying forward of original thought by change in form, proportions, or degree, so that the same thing is done in the same way by substantially the same means with better results, is not such "invention" as will sustain a patent.

Even if it be conceded that as to all the claims in suit under both patents some degree of novelty existed in using a conveyor in the form of an endless chain, the indisputable fact remains that in defendants' machine made under Poll patent 1,888,143 there is no endless chain and that the planting disc therein, if under a broad interpretation of that word it may be regarded as a "conveyor", follows more closely the teachings of Zimmerman 342,490 and Bruhn 1,026,492 than those of the patents in suit. Plaintiff strongly urges that claims 13 and 14 of Vollink 1,765,467 read directly on Poll, 1,888,143. Obviously, if the conveyor element referred to in those claims is to be given so broad an interpretation as to include the revoluble disc of Poll 1,888,143, the validity of those claims cannot be sustained in view of the prior art herein referred to.

■ In reference to plaintiff's claim that machines made under Poll 2,003,390 constitute infringements of all the claims in suit under both Vollink patents, it is to be observed that the claims in suit of Vollink 1,765,468 describe the conveyor as having a "horizontal reach substantially parallel with the surface of the ground", while claims 4 and 5 of Vollink 1,765,467 specify "a conveyor disposed longitudinally of the machine, means for driving said conveyor at a speed corresponding to the speed of travel of the machine". The machine disclosed in Poll 2,003,390 does not have a conveyor disposed longitudinally of the machine. Nor does its conveyor have a horizontal reach substantially parallel to the surface of the ground. Defendants' machine has a vertically disposed conveyor which does not travel in parallelism with the ground. It is familiar law that infringement of a combination patent is not shown unless it appears that the alleged infringing device uses the entire combination. Infringement exists only if defendants use a combination of the same elements co-operating in accordance with the same principle. Under these rules, defendants' structure does not infringe.

■ If claims 11, 12, 13 and 14 of Vollink 1,765,467 are given a sufficiently broad construction to include defendants' machine, the conclusion must follow that they cannot be sustained in view of Davis

986,145. It is the view of the court that they are not entitled to such a construction. In the case of Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 63, 43 S.Ct. 322, 328, 67 L.Ed. 523, it is said: "In administering the patent law, the court first looks into the art, to find what the real merit of the alleged discovery or invention is, and whether it has advanced the art substantially. If it has done so, then the court is liberal in its construction of the patent, to secure to the inventor the reward he deserves. If what he has done works only a slight step forward, and that which he says is a discovery is on the border line between mere mechanical change and real invention, then his patent, if sustained, will be given a narrow scope, and infringement will be found only in approximate copies of the new device."

No infringement being found, it is unnecessary to pass upon the other issues raised by the pleadings.

The foregoing opinion is adopted by the court as its findings of fact and conclusions of law and is hereby made a part of the record.

A decree in conformity herewith may be presented for signature on or before February 21, 1938.